Justin Prato Esq, SBN 246968
PRATO & REICHMAN, APC
3675 Ruffin Road, Suite 220
San Diego, CA 92123
Telephone: 619-886-0252
Facsimile: 619-241-8309

Attorney for Plaintiff

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ELI OLIVARES,<br><br>Plaintiff,<br>vs.<br><br>MM DIAMOND INVESTMENTS, LLC.<br><br>Defendant. | Case No.:<br><br>**CLASS COMPLAINT FOR DAMAGES, INCLUDING PUNITIVE DAMAGES, INTEREST AND ATTORNEY'S FEES, AND FOR INJUNCTIVE RELIEF**<br><br>**Violation(s) of Telephone Consumer Protection Act of 1991; Violation of California Penal Code § 637.2** |

COMES NOW Plaintiff ELI OLIVARES (hereinafter referred to as "Plaintiff") who alleges as follows:

## JURISDICTIONAL ALLEGATIONS

1. Plaintiff is, and at all times herein mentioned was, a resident of the County of San Bernadino, State of California.

2. Defendant MM DIAMOND INVESTMENTS, LLC. ("DIAMOND" or "Defendant") is a corporation who is doing business in the County of San Bernadino, State of California.

3. This case is filed pursuant to the Telephone Consumer Protection Act of 1991, 47 U.S.C. §227 et. seq. The U.S. Supreme Court recently decided that federals courts have federal question subject matter jurisdiction over such civil actions under 28 U.S.C. §§ 1331 and 1441. *Mims v. Arrow Fin. Services, LLC*, -- U.S. --, 132 S.Ct. 740, 753 (2012). The state law claim herein arises out of a common nucleus of operative facts and is subject to supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

4. At all times herein mentioned each defendant was the partner, agent and employee of each co-defendant herein and was at all times acting within the scope of such partnership, agency and employment and each defendant ratified the conduct of each co-defendant herein.

## NATURE OF THE ACTION

5. Plaintiffs bring this class action against Defendant for injunctive relief and damages and all other relief available at law and in equity on behalf of themselves and members of the following classes of persons:

> *All persons and entities located within the United States of America who claim to be able to provide a phone bill or statement showing they were a residential telephone subscriber and that their number was registered on the National Do-Not-Call Registry to whose residential telephone Defendant and/or its agents transmitted two or more telemarketing calls in one calendar year at any time from July 30, 2021 to the present, including up to and through trial.*

6. The TCPA was passed in order to regulate telemarketing by prohibiting, inter alia, phone calls to numbers on the federal Do Not Call Registry run by the Federal Trade Commission. 47 U.S.C. § 227(b)(1)(B).

7. DIAMOND is engaged in a scheme to sell mortgage services via cold calls to residential phone numbers on the protected federal Do Not Call Registry.

8. Thus, DIAMOND is engaging in making illegal telemarketing calls prohibited by the Telephone Consumer Protection Act of 1991 ("TCPA"), which gives victims of junk calls a private right of action to sue for the intrusion on their privacy.

9. The modus operandi is the same for all the calls in this case, DIAMOND using an agent acting at the direction of DIAMOND or employees of DIAMOND to call various numbers in the United States to sell DIAMOND's services without regard to whether those numbers are on the Do Not Call Registry.

10. DIAMOND and/or its agents do not check the federal Do Not Call Registry before making these calls nor engage in any Do Not Call Registry compliance.

11. These cold calls are made to massive lists of phone numbers in the United States with no regard for whether these numbers have been registered on the National Do-Not-Call Registry ("DNC") or not.

12. DIAMOND has intentionally violated the TCPA in a so-far successful attempt to buy properties for years.

## FACTUAL SUMMARY

13. Defendants made ten (10) telemarketing calls to Plaintiff's residential cellular phone number ending in 9448 wherein they tried to pitch property buying services on the following dates and times (Pacific) and using the following Caller ID ("CID") numbers:

- January 17, 2022; 8:25 am; CID 951-527-6465
- January 18, 2022; 9:37 am; CID 951-527-6465
- January 19, 2022; 8:10 am; CID 951-527-6465

- January 19, 2022; 12:01 pm; CID 951-527-6465
- May 10, 2022: 1:47 pm; CID 951-902-0995
- June 1, 2022: 12:22 pm; CID 951-902-0995
- June 15, 2022; 4:13 pm: CID 951-257-8447
- June 16, 2022; 11:39 am: CID 951-257-8447
- June 23, 2022; 11:43 am; CID 951-518-8721
- June 23, 2022; 11:39 am: CID 951-257-8447

14. Plaintiff listed his residential cellular phone on the federal "Do Not Call" registry maintained by the Federal Trade Commission from at least 2015 to the present.

15. Plaintiff's cellular number is purely personal and residential and is not used in any way shape or form to operate any business entity or concern.

16. Each of the calls complained of was initiated using an automated telephone dialing system which used a random or sequential number generator to determine the order in which to pick phone numbers from a preproduced list then called using a pre-recorded voice.

17. While each of the calls complained of above used the Caller ID number, they did not transmit Caller ID name information as required by law. 47 C.F.R. § 64.1601(e).

**Call Details and Liability**

18. For the first three calls from January 17, 2022 until January 17, 2022, CID 951-527-6465, the Plaintiff did not answer these calls, but alleges that these calls were made by the Defendant based on the facts below.

19. Finally fed up with dealing with these illegal calls, the Plaintiff answered a call coming from CID 951-527-6465.

20. Plaintiff spoke to a telemarketer named "Sarah" who was advertising a cash offer for a home she believed belonged to Plaintiff.

21. Plaintiff told her she, and only she, could call him back later to discuss.

22. "Sarah" then called Plaintiff back from CID 760-223-7452 and asked some more questions about the property.

23. Plaintiff inquired who she worked for and she told Plaintiff that her full name was "Sarah Anderson" and she worked for "Diamond Investments" and said one of her acquisition agents would be calling him back.

24. On January 28, 2022 Plaintiff received a call from "Shawn" who left a voice message concerning the same subject that Plaintiff was discussing with "Sarah Anderson".

25. Plaintiff pleads on information and belief that this person was "Shawn McCann" as he is one of the officers for MM Diamond Investments, LLC.

26. Plaintiff does not claim any violations for these two previously mentioned calls.

27. Plaintiff researched this issue and found that the CID 951-527-6465 is claimed by MM Diamond Investments and the "Shawn McCann Homes Team" which also uses the name "Signature Real Estate Group".

28. Plaintiff then emailed "Shawn McCann" and explicitly told him that he did not consent to any further calls and to place Plaintiff on their internal DNC.

29. Plaintiff then received the calls from May 10, 2022 to June 16, 2022 alleged above.

30. Plaintiff did not answer any of these calls but all of them left a voice message stating the call was from "Morgan with Diamond Investments".

31. Plaintiff then sent another DNC request to "Shwan MaCann" stating he did not wish to be called.

32. Plaintiff then received a call on June 23, 2022 from CID 951-518-8721 that he answered.

33. The person on the line was a "Noah" who said he was calling on behalf of "Diamond Investments".

34. Plaintiff inquired if "Noah" was with "Shawn McCann" and "Noah" confirmed yes.

35. Plaintiff then told "Noah" that Plaintiff did not want to be called anymore as Plaintiff had previously told DIAMOND.

36. Finally, Plaintiff received a call on Juen 23, 2022 from CID 951-257-8447 that he answered.

37. The telemarketer identified herself as "Morgan" who said she was following up on a call from "Sarah" to him.

38. Plaintiff says that she needs to tell her boss "Shawn McCann" to stop calling him.

39. "Morgan" then told Plaintiff that she, "would relay the information to Shawn."

40. The facts above show that all of the calls were made by the same person or entity which Plaintiff alleges is the Defendant or agent of the Defendant.

41. Plaintiff never gave consent to any person from DIAMOND to call him other than the two calls to discover their identity, which are not alleged as violations in this complaint.

42. Plaintiff had never done any business with any DIAMOND or any of its agents or employees, even those named in this complaint.

43. Plaintiff never gave consent to any person from DIAMOND to call him other than the final two calls to discover their identity.

44. Plaintiff had never given any consent for the Defendant to call him.

45. Plaintiff had never done any business with the Defendant.

46. Plaintiff had not given consent to be called regarding any real estate property sales or any other real estate services to any person or on any website.

47. Plaintiff alleges on information and belief that each person he spoke to on any of the calls or texts specified in this complaint were employed by

Defendant directly to make telemarketing calls in addition to any other duties they may have.

48. Plaintiff alleges on information and belief that each person he spoke to on any of the calls or texts specified in this complaint were hired by Defendant if not directly employed by Defendant as Defendant's agent to make telemarketing calls in addition to any other duties they may have.

49. Plaintiff alleges on information and belief that each person he spoke to in any of the calls or texts specified in this complaint were employed by Defendant directly to make telemarketing calls in addition to any other duties they may have.

50. Plaintiff alleges on information and belief that each person he spoke to in any of the calls or texts specified in this complaint were hired by Defendant if not directly employed by Defendant as Defendant's agent to make telemarketing calls in addition to any other duties they may have.

51. Plaintiff alleges on information and belief that each person he spoke to in any of the calls or texts specified in this complaint those calls were made by persons who were employed by Defendant directly to make telemarketing calls in addition to any other duties they may have.

52. Plaintiff alleges on information and belief that each person he spoke to in any of the calls or texts specified in this complaint those calls were made by persons hired by Defendant if not directly employed by Defendant as Defendant's agent to make telemarketing calls in addition to any other duties they may have.

53. Plaintiff alleges on information and belief that for all calls alleged in that the employee or agent of Defendant who made the call did so on behalf of the Defendant.

54. Plaintiff alleges on information and belief that for all calls alleged that the employee or agent of Defendant who made the call did not scrub the number against the Do-Not-Call Registry.

55. Plaintiff alleges on information and belief that for all calls alleged that the Defendant's owners, executives and managers knew that the calls were being make to telemarked the services of Defendant.

56. Plaintiff alleges on information and belief that for all calls alleged that the Defendant's owners, executives and managers knew that the telemarketing calls alleged were being made on the behalf of the Defendant.

57. Plaintiff alleges on information and belief that for all calls alleged that the Defendant's owners, executives and managers knew that the calls being made were not scrubbed against the Do-Not-Call Registry.

58. Plaintiff alleges on information and belief that for all calls alleged that the Defendant's owners, executives and managers were willfully ignorant of the actions of their employees and agents who were making the alleged calls on Defendant's behalf if they did not have direct knowledge.

## Actual Harm Allegations

59. Plaintiff has been harmed by the junk calls a complained of herein by the direct waste of his time during the calls themselves, the indirect waste of time in having to break from other important tasks and spend time catching up after these junk calls, the waste of telephone service which he and not Defendants must pay for, the costs of having to pursue legal remedies, and in the aggravation and consequent health effects of stress these illegal intrusions have caused.

60. The Plaintiff alleges that all of the calls were an invasion of his privacy.

61. During at least one of the calls at issue Plaintiff wanted to make an outgoing call at the same time and was not able to do so, being involuntarily disposed of the use of his phone by Defendants' illegal calls.

///

## CLASS ACTION ALLEGATIONS

62. **Description of the Class**: Plaintiffs bring this class action against Defendant for injunctive relief and damages and all other relief available at law and in equity on behalf of themselves and members of the following two sub-classes of persons.

*All persons and entities located within the United States of America who claim to be able to provide a phone bill or statement showing they were a residential telephone subscriber and that their number was registered on the National Do-Not-Call Registry to whose residential telephone Defendant and/or its agents transmitted two or more telemarketing calls in one calendar year at any time from July 30, 2021 to the present, including up to and through trial.*

63. Excluded from the Class are governmental entities, Defendant, any entity in which Defendant have a controlling interest, and Defendant' officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns. Also excluded from the Class is any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

64. Plaintiff reserves the right to modify the Class description and the Class period based on the results of discovery.

65. **Numerosity**: The proposed Class is so numerous that individual joinder of all its members is impracticable. Due to the nature of the evidence of the number of calls made by Defendant, Plaintiffs believe that the total number of Class members is at least in the tens of thousands and members and the members are geographically dispersed across

California and the United States. While the exact number and identities of the Class members are unknown at this time, such information can be ascertained through appropriate investigation and discovery, namely through Defendant's call records. The disposition of the claims of the Class members in a single class action will provide substantial benefits to all parties and to the Court.

66. **Common Questions of Law and Fact Predominate**: There are many questions of law and fact common to the representative Plaintiff and the Class, and those questions substantially predominate over any questions that may affect individual Class members. Common questions of fact and law include, but are not limited to, the following:

a. Whether Defendant transmitted two or more sales calls in any one calendar year to numbers on the National "Do-Not-Call" Registry.

b. Whether Defendant transmitted these calls without prior express consent from the owners of those lines or a business relationship with them established before the calls were made.

c. Whether Defendant transmitted any calls for telemarketing purposes using prerecorded or artificial voice to residential lines without prior express written consent.

d. Whether the transmission of these calls was done willfully or knowingly by Defendant.

e. Whether agency relationships giving rise to TCPA liability exist amongst and between Defendant and its agents

67. **Typicality**: Plaintiff's claims are typical of the claims of the members of the Class. Plaintiff and all members of the Class have been similarly affected by Defendant's common course of conduct since Defendant has repeatedly called the Class to sell their financial products.

68. **Adequacy of Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has retained counsel with experience in handling complex litigation who has been previously certified as class counsel. Plaintiff and class counsel are committed to vigorously prosecuting this action on behalf of the Class and have the financial resources to do so. Neither Plaintiff nor class counsel have any interests adverse to those of the Class.

69. **Superiority of a Class Action**: Plaintiff and the members of the Class suffered, and will continue to suffer, intangible and tangible harm as a result of Defendant's unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the present controversy. Individual joinder of all members of the class is impractical. Even if individual class members had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed. Individual litigation magnifies the delay and expense to all parties in the court system of resolving the controversies engendered by Defendant's common course of conduct. The class action device allows a single court to provide the benefits of unitary adjudication, judicial economy, and the fair and efficient handling of all class members' claims in a single forum. The conduct of this action as a class action conserves the resources of the parties and of the judicial system and protects the rights of the class member. Furthermore, for many, if not most, a class action is the only feasible mechanism that allows therein an opportunity for legal redress and justice

70. Adjudication of individual class member's claims with respect to Defendant would, as a practical matter, be dispositive of the interests of other members not parties to the adjudication and could substantially impair or impede the ability of other class members to protect their interests.

# CAUSES OF ACTION

## FIRST CAUSE OF ACTION: TCPA VIOLATION

## CALL TO NUMBER ON THE NATIONAL "DO-NOT-CALL" REGISTRY

**(On Behalf of the Plaintiff Class]**

71. Plaintiff realleges all paragraphs above and incorporates them herein by reference.

72. Plaintiff is bringing this action pursuant to the provisions of the Telephone Consumer Protection Act of 1991 (47 U.S.C. §227 and 47 C.F.R. §64.1200 – "TCPA").

73. Subdivision (c) (2) of Section 64.1200 of Title 47 of the Code of Federal Regulations makes it unlawful for any person to "initiate any telephone solicitation" to "A residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations".

74. At all times relevant to this complaint, Plaintiff had registered his residential telephone number on the national do-not-call registry maintained by the U.S. Government.

75. Defendants have called Plaintiff's residential telephone line for solicitation purposes during the statutory period of the last 4 years, pursuant to 28 U.S.C. § 1658. These calls are the only calls known to Plaintiff at this time and Plaintiff states on information and belief, without yet having the aid of full discovery, that it is quite likely that Defendant has made many more violative calls to Plaintiff's residential telephone line. These calls were not made in error, nor did Defendant have express permission from Plaintiff to call, nor did Defendant have a personal relationship with Plaintiff. 37 C.F.R. § 64.1200 (c) (i), (ii), & (iii).

76. Subdivision (c)(5) of section 227 of title 47 of the United States Code permits a private right of action in state court for violations the

national do-not-call registry rules promulgated thereunder. Plaintiff may obtain relief in the form of injunctive relief, or Plaintiff may recover $500.00 for each violation, or both. If the court finds that defendants' violations were willful or knowing, it may, in its discretion, award up to three times that amount.

WHEREFORE Plaintiffs pray for judgment against Defendant, and each of them, as follows:

On the FIRST CAUSE OF ACTION:

1. For an award of $500.00 for each violation of 47 U.S.C. § 227(c)(2);
2. For an award of $1,500.00 for each such violation found to have been willful;
3. For injunctive relief pursuant to 47 U.S.C. 227(c)(5)(A);

On ALL CAUSES OF ACTION:

4. For attorney’s fees pursuant to all applicable federal and state statutes;
5. For costs of suit herein incurred; and
6. For such further relief as the Court deems proper.

DATED: 7/30/2025

**PRATO & REICHMAN, APC**

__/s/ Justin Prato Esq.______
By: Justin Prato Esq..
**Prato & Reichman, APC**
Attorneys for Plaintiff